THE STATE OF SOUTH CAROLINA, *EX RELATIONE* COLEMAN,
v. TOWN COUNCIL OF CHESTER.

1. An act entitled, " An act to provide a local option law for the incorporated
   cities, towns and villages of this State " (17 *Stat.* 893), declared in its fourth
   section, that the act should not apply to any city, town or village in which
   the sale of liquors is now, or shall hereafter be, prohibited by legislative
   enactment.  *Held*, that the act related to but one subject—local option—
   which was expressed in its title.
2. An act to prohibit the sale of intoxicating liquors in the town of Chester
   (17 *Stat.* 1059), does not violate article I., section 12, of the constitution,
   which declares that "no person shall be subjected in law to any other
   restraints or disqualifications, in regard to any personal rights, than such
   as are laid upon others under like circumstances."

Original application for writ of *mandamus.*

This was a petition entitled the State of South Carolina, *ex
relatione* John K. Coleman and others, against the town council
of Chester.  The opinion states the case.

*Mr. S. P. Hamilton,* for relators.

The clauses of the constitution violated are article II., section
20, and article I., section 12.  An act violating article II., sec-
tion 20, is unconstitutional.  13 *Mich.* 482 ; 12 *Geo.* 36.  The
title of the local option law is general and sweeping, and in it
can be found no intimation that it was intended to prohibit local
option in certain cases.  This section is also violated by the act
to prohibit the sale of liquor in Chester, the title of which
makes no allusion whatever to the local option law.  But there
is a broader and more important provision violated, article I,
section 12.  This section prohibits discrimination.  Under its
charter, the citizens of Chester have a right to vote—under the
local option law they have a right to vote—but the fourth
section of the local option law, and the act to prohibit the sale
of liquors in Chester, take away the right accorded in a general

law, to citizens of other towns, and is thus a disqualification of electors of Chester. *Cool. Cons. Lim.* 391. A case most apposite to ours is *Kelly* v. *The State*, 6 *Ohio St.* 269. The local option law must not be confounded with acts controlling municipal corporations in the matter of police regulations, for it divests municipalities of the power to determine the question of license or no license, and gives it to the people. Even the exercise of police power by the legislature may be unconstitutional.

*Messrs. E. C. McLure, A. G. Brice,* contra.

December 7th, 1882. The following order was passed:

PER CURIAM. On hearing the petition and return, with the agreement of counsel, it is ordered that the petition be dismissed for reasons which will be stated in an opinion hereafter to be filed.

March 19th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This was an application for the writ of *mandamus*, heard by this court under and by virtue of its original jurisdiction in such cases. The character of the case and the questions involved will appear from the statement which follows.

An act of the General Assembly of this State, approved February 9th, 1882, and known as the local option law, provided, that upon the petition of one-third of the number of citizens who voted at the next preceding municipal election of any incorporated city, town or village in this State, the council of such city, town or village was authorized and required to submit the question of license or no license, to the qualified electors of such city, town or village, at a special election to be holden, &c. By the fourth section of this act it was further provided, that it should not apply to any city, town or village in which the sale of ardent spirits is now, or shall hereafter be prohibited by legislative enactment. On the same day that this act was approved, another act, known as " An act to prevent the

2E

sale of spirituous liquors in the town of Chester, in Chester county," was also approved.

On November 11th, certain citizens of the town of Chester, equal and exceeding in number the one-third of the votes cast in the preceding municipal election in said town, petitioned the town council of Chester to hold a special election under the local option law, at which the question of license or no license should be submitted to the qualified electors as provided for in said act. This petition was refused on the ground that the act to prevent the sale of spirituous liquors in the town of Chester being of force, the council was prohibited from entertaining the petition by virtue of the fourth section of the local option law itself. Thereupon the petitioners instituted this proceeding for *mandamus* to require the town counsel to grant their prayer.

The questions involved do not demand of this court any extended discussion of the principles upon which the writ of *mandamus* depends. It may be admitted, so far as this case is concerned, that if the positions taken by the petitioners are sound, the writ should be ordered. We will therefore confine our examination to these positions.

The petitioners claim that the fourth section of the local option law, as well as the act to prevent the sale of spirituous liquors in the town of Chester, are unconstitutional, and consequently that the local option law stands unaffected thereby, which law thus unaffected being applicable to all the towns, cities and villages in the State, entitles the petitioners to the relief which they seek, and this is the question in the case.

It is urged that the fourth section of the local option law is unconstitutional because in conflict with section 20 of article II., of the constitution, which provides that "every act or resolution having the force of law, shall relate to but one subject, and that shall be expressed in the title." This section no doubt contains a wise provision, and if properly observed would tend greatly to prevent confusion and doubt as to the exact meaning and intent of legislative enactments, and to this end it should be enforced by the courts in all proper cases, due care being exercised lest a too strict construction might defeat its very object and purpose by clogging legislation and loading down our

statute books, with numberless separate acts wholly unnecessary to the end designed. By such a construction few matters could become the subject of legislation in a single act. Every qualification and condition imposed would have to be embraced in a separate act, which would make it difficult and tedious to ascertain the statute law in any matter, as all the acts scattered through the statutes would have to be examined before any conclusion could be reached.

Take, for example, the general appropriation act. Every section, in fact almost every line in a strict sense, refers to a different subject as different appropriations and for different purposes are certainly made, and if each of these had to be in a separate act it would entail infinite confusion in a matter of the highest importance to the State. It can not be that the framers of the constitution ever intended that such a construction should be placed upon this section. On the contrary, while enforcing it when necessary, it should be at least so construed as to prevent the results indicated above.

Now can it be said that the fourth section of the local option law under consideration is in violation of section 20, article II., of the constitution, when construed under the light of the principle announced above? The title of the local option law is as follows: " An act to provide a local option law for the incorporated cities, towns and villages of this State." The subject expressed in this title is " local option." Does the fourth section relate to a different subject? That section simply provides that the act of which it is a section " shall not apply to any city, town or village in which the sale of ardent spirits is now or shall hereafter be prohibited by legislative enactment." This is the whole of the fourth section. It is apparent that it does not relate to a different subject from that expressed in the title of the act; on the contrary, it has direct reference to that subject and to no other, to wit, local option.

It is true, under the operation of the third section, the privilege of local option may be allowed to some towns, cities and villages, which is denied to others under the fourth section, yet this is not the incorporation of a new subject into the act different from that expressed in the title, but it is simply limiting and

qualifying that subject in its application to the towns, cities and villages of the State in the nature of a proviso, an exception to the act. If the relators' construction be the correct one, no exceptions could be made in the application of acts by provisos. A separate act would always be necessary.

Next as to the act to prevent the sale of spirituous liquors in the town of Chester. The relators contend that this act violates section 12, article I., of the constitution. That section is as follows: "No person shall be disqualified as a witness or be prevented from acquiring, holding and transmitting property or be hindered from acquiring education, or be liable to any other punishment for any offense or be subjected in law to any other restraints or disqualifications in regard to any personal rights than such as are laid upon others under like circumstances."

It is urged that this section was intended to prevent discrimination in legislation as to personal rights. There can be no doubt but that such was its intention, and no one can fail to appreciate the importance and the wisdom of such a restriction upon legislative power. It underlies our constitution and is a fundamental principle in republican governments, and should not be invaded.

But we do not see its application to this case. We do not see that any citizen of Chester is deprived of any right which any other citizen of that town is allowed. It is true that the provisions of the charter of Chester may be different from those which appear in some of the other towns in the State, but it certainly can not be urged seriously that the section of the constitution referred to, is violated by such difference. And yet, upon the relators' construction, such would be the result. Not only so, but when that construction is pressed to its legitimate result it would necessitate exact uniformity in all charters, both public and private. No distinction could be made. The condition and circumstances requiring in one place a different municipal government, from another demanding the exercise of different powers and duties, would have to be disregarded, and a dead sea of exact uniformity established. This could not have been the purpose of this section.

The judgment of this court has already been pronounced dismissing the petition of the relators; and it is ordered that this opinion be filed as containing the principles upon which said judgment is based.